149 B.R. 740 (1993)
In re SMUGGLER'S BEACH PROPERTIES, INC., Debtor.
In re The COVE AT YARMOUTH ASSOCIATES LIMITED PARTNERSHIP, Debtor.
Bankruptcy Nos. 89-13687-JNF, 90-10477-JNF.
United States Bankruptcy Court, E.D. Massachusetts.
January 8, 1993.
*741 Paul F. O'Donnell, III, Boston, MA, for Hinckley, Allen, Snyder & Comen as Counsel to the Chapter 11 Trustee.
Gary Donahue, Boston, MA, for U.S. Trustee.
Elizabeth A. Wolfe, Boston, MA, for The Cove at Yarmouth Resort Home Owners Ass'n, Inc.
MEMORANDUM ON FINAL APPLICATION FOR ALLOWANCE OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES OF HINCKLEY ALLEN SNYDER & COMEN, COUNSEL TO THE CHAPTER 11 TRUSTEE
JOAN N. FEENEY, Bankruptcy Judge.
I. INTRODUCTION
Hinckley Allen Snyder & Comen, ("HASC" or "the Firm") in its Final Application for Allowance of Attorneys' Fees and Reimbursement of Expenses, as amended by a First Supplement filed on September 21, 1992, and a Second Supplement filed on November 16, 1992 ("the Application"), seeks compensation in the sum of $591,054.21 and reimbursement of expenses in the sum of $21,692.85 for services rendered as counsel to the Chapter 11 Trustee, Lawrence Ginsberg ("Ginsberg" or the "Trustee") in these two jointly-administered cases.[1]
Objections to the Application were filed by the United States Trustee ("UST"), the Resolution Trust Corporation (the "RTC"), and the Cove at Yarmouth Resort Hotel Owners Association, Inc. (the "Association"). Prior to summarizing the objections, a brief review of the background of these cases is warranted.
II. BACKGROUND
These Chapter 11 cases were commenced on November 27, 1989. The Debtors owned and marketed 5,000 unsold time-share intervals located at two projects in Yarmouth, Massachusetts. The Debtors' income was derived from sales and rentals of units. As of the date of the filing, over $17,000,000 was owed to the major secured lender, Sentry Bank,[2] which had a first mortgage on and security interest in all Debtors' assets. The Association for both projects was owed $4,000,000 for unpaid common area charges, asserted construction defects, and other obligations.
In May of 1990, Lawrence Ginsberg was appointed Chapter 11 Trustee on the motion of Sentry Bank. HASC was appointed as his counsel on June 13, 1990.
In April of 1992, the Debtors filed their Third Amended and Restated Chapter 11 Plan of Reorganization  a liquidating plan. The plan provided for the establishment of a Creditors' Trust, the transfer of all assets to the Trustee, and the sale, in retail or in bulk, of the unsold time-share units. Pursuant to the plan, sale proceeds are to be distributed to lienholders, the Association, administrative claimants, and unsecured creditors up to a maximum of 10% of their allowed unsecured claims.
Although objections to confirmation were filed by various parties, all objections were withdrawn prior to the hearing on confirmation. The plan was confirmed on July *742 31, 1992. Fee applications were filed after confirmation.
III. THE OBJECTIONS
The UST objects to the fee application of HASC, asserting that the requested compensation is unreasonable in light of the small dividend unsecured creditors are to receive in the cases. The UST asserts that the amount of time devoted to the plan and disclosure statement (resulting in a total charge of $108,875.40) and to the fee application (116.7 hours for a charge of $21,337.80) is excessive and unreasonable. The UST also contends that counsel's services in large part consisted of responding to consumer complaints, a function that the UST asserts belongs to the Attorney General, not the Trustee. Finally, the UST asserts that a paralegal should not charge more than $50 per hour.
In its objection, the RTC seeks the following: 1) an allocation of compensation between the two estates (without proposing any formula for allocation); 2) a determination that the RTC's rights to prevent invasion of its collateral are preserved; 3) a disallowance of estimated time; and 4) a delay in the order approving compensation until fee applications of all professionals have been heard. The last ground is moot as all fee applications have now been filed and heard.
The Association in its objection to the Application argues that HASC has a material conflict of interest and is not disinterested because the Firm, in addition to representing the Trustee in these cases, represents Ginsberg in his individual Chapter 7 case, which is pending in this district. The Association alleges that HASC has advised the Trustee to reject its offer to purchase the Debtor's assets in favor of an offer from another group because of the Trustee's personal financial problems.
A hearing on the HASC's application was held on December 18, 1992. The Association made no showing of actual wrongdoing by the Trustee or HASC. Consequently, the Court overrules the objection on this ground, as well as for the reasons set forth below.
IV. DISCUSSION
A. Compensation
Under 11 U.S.C. § 328(c), the Court may deny compensation for services of a professional if at anytime the professional is not disinterested or holds an interest adverse to the estate. In re Carrousel Motels, Inc., 97 B.R. 898 (Bankr.S.D.Ohio 1989). The statute contains a two prong test requiring that professionals employed in a case be disinterested and neither hold or represent an interest adverse to the estate. See In re Hub Business Forms, Inc., 146 B.R. 315 (Bankr.D.Mass.1992). The term "disinterested" is defined in § 101, which prescribes five elements:
"Disinterested person" means person that 
(A) is not a creditor, an equity security holder, or an insider;
(B) is not and was not an investment banker for any outstanding security of the debtor;
(C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;
(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and
(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in the subparagraph (B) or (C) of this paragraph, or for any other reason.
11 U.S.C. § 101(14).
The Association cites no authority, and the Court has been unable to locate any decision to support its contention that HASC is not disinterested or that the representation of the Trustee in his individual capacity disqualifies HASC from representing *743 the Trustee in his fiduciary capacity. Accordingly, the objection of the Association is overruled.
The amount of compensation awarded to professionals under 11 U.S.C. § 330 is to be reasonable, given the nature, extent, and value of services, the time spent calculated on the basis of prevailing rates, and the cost of comparable services. Cf. Missouri v. Jenkins, 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). In this district, the lodestar approach is utilized. It requires the determination of a reasonable hourly rate, application of that rate to the time reasonably expended, as well as consideration of numerous other factors. Boston & Maine Corp. v. Moore, 776 F.2d 2 (1st Cir.1985); In re Bank of New England Corp., 134 B.R. 450 (Bankr.D.Mass. 1991), aff'd, 142 B.R. 584 (D.Mass.1992) (hereafter referred to as "BNE"). Thus, the following factors are applied to determine a reasonable fee:
(1) the time and labor required;
(2) the novelty and difficulty of the questions presented by the case;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment by the attorney due to acceptance of the case;
(5) the customary fee for similar work in the community;
(6) whether the fee is fixed or contingent;
(7) time pressures imposed by the client or the circumstances;
(8) the amount involved and results obtained as a result of the attorneys' services;
(9) the experience, reputation and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with the client;
(12) awards in similar cases.
Boston Maine Corp. v. Moore, supra; In re First Colonial Corp. of America, 544 F.2d 1291 (5th Cir.1977); Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974); In re First Software Corp., 79 B.R. 108 (Bankr.D.Mass.1987).
In In re First Software Corp., supra, former Chief Judge Gabriel noted "[t]he Court's review of a fee application begins with a determination of the accuracy of the arithmetic and proceeds to an evaluation of whether services are sufficiently identified and explained." Id. at 111. The Court gives HASC a failing grade in arithmetic. Despite the Court's best efforts, it is unable to duplicate HASC's computations to verify the accuracy of its figure for total compensation requested.
With respect to the substance of fee applications, an applicant submits a deficient fee application at its peril. BNE, supra, at 467-68. Reduction of compensation is appropriate where time records inadequately describe services, provide insufficient detail, or are incomprehensible. The general subject matter or purpose of meetings, letters, telephone conferences, and office conferences must be set forth. In re Office Products of America, Inc., 136 B.R. 964, 976 (Bankr.W.D.Tex.1992). Where time entries fail to identify the subject matter of the work, compensation for the task may be denied or reduced. In re Citrone Development Corp., 106 B.R. 359, 362 (Bankr.S.D.N.Y.1989). The rationale for the requirement is simple: the Court cannot find services reasonable or necessary if the need and purpose of a service is not disclosed. BNE, supra, at 467.
The reasonableness of the time spent is a crucial factor in determining an appropriate fee. Excessive time spent on a liquidating Chapter 11 case may warrant a downward adjustment of the hourly rate or the number of hours billed or both. In re R & B Institutional Sales, Inc., 65 B.R. 876, 882 (Bankr.W.D.PA.1986). Performance of unnecessary work, inefficiency, and failure to delegate appropriate tasks to junior lawyers or paralegals also may warrant a reduction in fees.
In accordance with Local Rule 34, HASC's original Application (not including the services described in the Second Supplement), provides a narrative description of services, and a categorization of services. These services are broken down into fourteen categories as follows: *744 

CATEGORY HOURS AMOUNT
OBJECTION TO DISCHARGE OF MALCOLM 99.36 $ 13,671.65
McPHAILL/REPRESENTATION OF TRUSTEE
RE: McPHAILL PLAN OF REORGANIZATION
STIPULATION REGARDING USE OF CASH 304.44 $ 35,956.30
COLLATERAL, GRANTING AUTHORITY TO
SELL FREE AND CLEAR OF LIENS AND PROVIDING
ADEQUATE PROTECTION AND IMPLEMENTATION
OF STIPULATION FOR USE
OF CASH COLLATERAL
DELPHCON LITIGATION, NEGOTIATIONS 81.91 $ 15,548.38
AND SETTLEMENT
THE COVE AND SMUGGLERS BEACH TITLE 191.29 $ 32,419.25
ISSUES
TAX ABATEMENT LITIGATION, NEGOTIATION, 387.10 $ 67,247.05
SETTLEMENT AND BORROWING OF
FUNDS TO MEET TAX OBLIGATIONS
INVESTIGATION OF AND CONTESTED ISSUES 73.57 $ 13,611.45
RE: LIBERTY BANK
NEGOTIATIONS WITH HOMEOWNERS ASSOCIATION, 375.04 $ 47,289.85
DEALINGS WITH UNSECURED
HOMEOWNER CREDITOR ISSUES, REGARDING
REAL ESTATE, DEED AND MORTGAGE
FEE APPLICATION 116.17 $ 21,337.80
PLAN OF REORGANIZATION 282.17 $ 53,900.75
ANALYSIS OF CLAIMS 91.44 $ 13,135.45
COBBLESTONE/FDIC DEMAND FOR FURNITURE-DISGUISED 97.91 $ 15,880.73
SECURITY INTEREST
CLAIM
NEGOTIATIONS WITH RTC 189.89 $ 37,244.85
DISCLOSURE STATEMENT/FEASIBILITY ISSUES 287.32 $ 54,974.65
ENVIRONMENTAL AND MISCELLANEOUS ISSUES 104.96 $ 16,649.95
 ________ ___________
TOTAL 2,682.55 $438,868.10

The Firm spent approximately 2,700 hours of time in these cases. The hourly rates charged ranged from $75.00 to $275.00 per hour. The average hourly rate is $163.60. Eight partners, all having rates in excess of $200, worked 1,027.5 hours, for total charges of $219,212.65. Indeed, the attorney with the most time was a partner with a 1992 hourly rate of $215.00. A total of ten associates with rates ranging from $110 to $190, spent 1,268.01 hours, for total charges of $186,939.85. Six legal assistants with rates ranging from $35 to $100 spent a total of 365.81 hours, for total charges of $30,971.45.
HASC's Application contains many incomprehensible and incomplete entries. It *745 reveals unjustified tasks and duplication of effort at all levels of service. A review of the itemized time records attached to the Application reveals at least one hundred entries for telephone conferences and meetings that fail to describe in any way the subject matter or purpose of the conference. Accordingly, because it is impossible to evaluate the reasonableness or necessity of such services, a percentage reduction of allowable time is appropriate.
HASC's time records also reflect numerous instances of unjustified duplication of effort. The Firm had between ten to fifteen professionals working on these cases during the period of time covered by the Application. Although inter-office conferences are essential to the provision of competent services in a Chapter 11 case of this magnitude, the daily time entries detail hundreds of office conferences, not only between two attorneys, but among three, four, and sometimes five attorneys. The need for conferences among more than two attorneys is not explained. Similarly, HASC seeks compensation for multiple attorneys' preparation for and attendance at negotiations and court hearings. In the absence of justification, the presence of multiple attorneys is not compensable.
The time entries also reflect inappropriate delegation of tasks. Inefficiencies are evident in the division of work between junior and senior attorneys in several instances. For example, there are entries reflecting partners performing legal research that probably should have been done by associates. Moreover, three-quarters of the time spent on the final fee application ($21,337.80) was by a partner billing at hourly rates of $200 and $215. The Application fails to state why the legal research had to be performed by a partner or why the Application could not have been compiled, at least in large part, by paralegals.
Finally, it appears that HASC spent excessive time on several categories of tasks. The Firm spent nearly one hundred hours at a cost of $13,171.65 to obtain a default judgment on its complaint objecting to the discharge of Debtors' principal. The Firm spent over three hundred hours in negotiating the stipulation for use of cash collateral, an excessive amount when added to nearly two hundred hours of time spent negotiating with the RTC, the major secured creditor. It also appears that the Firm was performing services that were duties of the Trustee, such as preparing the monthly budgets for the Debtors' business. This is time that is not compensable. See In re J.W. Knapp Co., 930 F.2d 386 (4th Cir.1991).
Based upon the meritorious objections filed by the UST and in part by the RTC, and the excessive time spent in several categories of work, the instances of improper delegation, and the other deficiencies noted above, the Court sustains the objection of the UST in full and the objection of the RTC in part, and finds that a reduction of allowable time spent is appropriate. Accordingly, the request for compensation for legal services is reduced by twenty percent (20%), and the Application is allowed in the sum of $472,843.87 for compensation. The Debtors' proposed 64%/36% allocation between the two cases is approved.
B. Expenses
The Second Supplement to the Application seeks reimbursement of expenses in the sum of $21,692.85 for copying, binding, postage, telephone, telecopier, cabfare, travel, filing fees, Federal Express, deliveries, meals, and miscellaneous charges. In accordance with the criteria set forth in BNE and In re First Software Corp., supra, this Court shall disallow reimbursement for meals, and reduces the telecopier and Federal Express charges by 50% because the application fails to demonstrate the need for emergency communication. The other charges are proper. Accordingly, reimbursement of expenses is allowed in the sum of $20,200.60.
The foregoing shall constitute findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. An appropriate order shall issue.
NOTES
[1] The Application is filed and covers services in both cases exclusive of two categories of services performed only in the Cove case. The Application proposes to allocate sixty-four per cent (64%) of the fee request to the Smuggler's case and thirty-six per cent (36%) to the Cove case. No objections to the proposed allocation have been raised by any party-in-interest.
[2] During the course of these proceedings Sentry Bank was taken over by the RTC. The RTC is currently owed approximately $21,000,000, which all parties agree is a grossly undersecured claim.