**In re Felix de WELDON, Debtor.**

**Bankruptcy No. 91–10487.**

United States Bankruptcy Court,
D. Rhode Island.

Jan. 12, 1995.

---

Jason Monzack, Chapter 7 Trustee, Kirshenbaum & Kirshenbaum, Cranston, RI.

John A. Murphy, Murphy & Murphy, Jamestown, RI, Guy B. Moss, Bingham, Dana & Gould, Boston, MA, for debtor.

Brian Spero, Partridge, Snow & Hahn, Providence, RI, for FDIC.

Office of the U.S. Trustee, Sheryl Serreze, Providence, RI.

## ORDER

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on September 20, 1994, on the fee applications of: (1) Jason Monzack, Esq., the Chapter 7 Trustee, in the amount of $29,873, and Mr. Monzack as Trustee's counsel, in the amount of $6,667; (2) Raymond Raiche, Accountant for the Debtor, in the amount of $2,231; (3) Bingham, Dana & Gould ("BD & G"), co-counsel for the Debtor, in the amount of $55,839 in fees and $4,109 in expenses; and (4) Murphy & Murphy ("Murphy"), co-counsel for the Debtor, in the amount of $37,852 in fees and $1,004 in expenses. Murphy also asks that we take up at this time its

earlier interim fee application which was allowed, on account, in the amount of 75%. The firm now seeks the remaining $7,147.

After examining the requests according to the standards applicable in this Circuit, *see In re Swansea Consol. Resources, Inc.,* 155 B.R. 28 (Bankr.D.R.I.1993); *In re Bank of New England Corp.,* 134 B.R. 450 (Bankr. D.Mass.1991), *aff'd,* 142 B.R. 584 (D.Mass. 1992), it is ORDERED:

1) The applications of Jason Monzack as Chapter 7 Trustee and as Attorney for the Trustee, *see* 11 U.S.C. 327(d), are ALLOWED as filed.

2) The accountant for the Debtor, Raymond Raiche, uses .25 per hour minimum billing increments, rather than .10 increments. After examination of the services described within his .25 hour time charges, the request is ALLOWED in the amount of $2,100. *See In re Corporacion de Servicios Medico–Hospitalarios de Fajardo, Inc.,* 155 B.R. 1, 2–3 (Bankr.D.P.R.1993).

3) The application of Bingham, Dana & Gould is excessive on its face, and, even without a close examination, requires a substantial downward adjustment. Additionally, however, we have done an in depth analysis, and in consideration of the objection filed by the FDIC, in which the United States Trustee has joined, we make the following observations, conclusions, and rulings.

■ At the outset, we address the Applicant's argument that FDIC lacks standing to object to its fee application. It is common knowledge within the community of this case that the FDIC is, by far, the largest unsecured creditor of the Debtor, and as the holder of that undesirable distinction, FDIC clearly has standing to comment as to the merits of this, or any other application in the case. *See* Fed.R.Bankr.P. 2002(a)(7). This contention, which borders on being frivolous, and which casts a serious shadow on the validity of the Applicant's remaining arguments, is rejected without further comment.

■ On its merits, BD & G's application suffers from four major problems: a) lumping of tasks under a single time entry;[1] (See Exhibit A); b) excessive duplication[2] of services; *see In re Yankee Seafood Corp.,* 53 B.R. 285, 286 (Bankr.D.R.I.1985); *In re Casco Bay Lines, Inc.,* 25 B.R. 747, 755 (Bankr. 1st Cir.1982); (See Exhibit B); c) excessive, unnecessary, and unexplained interoffice and intra-office conferences; (See Exhibit B). These shortcomings make it difficult or nearly "impossible to evaluate the reasonableness or necessity of such services ... [and therefore,] a percentage reduction of allowable time is appropriate." *In re Smuggler's Beach Properties, Inc.,* 149 B.R. 740, 745 (Bankr.D.Mass.1993); *see also Swansea,* 155 B.R. at 33.

Most importantly, however, the Applicant has not explained or demonstrated *any* quantifiable benefit to the Estate from the services in question, and certainly not of the magnitude reflected in the request. *See Id.* at 31. The Applicant does suggest that the basis for the liquidation conducted by the Trustee was set forth in the Chapter 11 plan which it prepared and filed. This is a difficult argument to follow. While we acknowledge the Applicant's physical presence in the case as the liquidation was being conducted, neither in real time nor in hindsight has the Applicant shown how the estate has benefited in any way by the more than 350 hours expended by the firm. Because of our inability to evaluate the reasonableness, the necessity, or the value of the services as described by the Applicant, we do the best we can with what we have. *See Swansea,* 155 B.R. at 33;

---

**1.** We examine *every* entry in *every* application, and arrive at our conclusions after consideration of all relevant factors—i.e., no request for compensation is reduced arbitrarily, and many are approved as filed. On the other hand, neither are they approved automatically because the hours spent, times the rate charged, equals the amount requested. Bingham, Dana & Gould has already been paid $88,435.68 for services in this case which, in retrospect, were of questionable value, and which suffer from the same deficiencies as those discussed below. The prior payments to Debtor's counsel, together with the present requests, total $259,751. With $384,359 available for distribution to creditors, due almost exclusively to the efforts of the Trustee, the combined requests of Debtor's counsel are clearly out of line.

**2.** We recognize and allow that *some* duplication is inevitable.

*In re Smuggler's Beach,* 149 B.R. at 745. "The Court ... may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of testimony of witnesses as to value." *In re WHET, Inc.,* 61 B.R. 709, 713 (Bankr. D.Mass.1986). Based on our familiarity with this case, as well as this Court's general experience in reviewing fee applications, we find that a forty-five percent overall reduction is appropriate, and that such a reduction allows the Applicant the benefit of *many* doubts.

■ Additional problems with this application include the following: The request includes 7.5 hours for "estimated additional time." Compensation for professional services is not due until such services are actually performed, and evaluated, and this item is therefore disallowed. *See* 11 U.S.C. § 330(a)(1). The Applicant also seeks reimbursement of 31.1 hours for services performed by summer associates, at the rate of $90 per hour. In this instance we agree with Judge Hillman who said in *In re Bank of New England,* "it will not permit the time of summer associates or interns, however described, to be charged to an estate ... [because] such employees do not provide enough value to the work performed by the firm to justify allowances." *Id.* at 455.

Regarding expenses, and applying the standards set forth in *In re 321 S. Main Street, L.P.,* 155 B.R. 41 (Bankr.D.R.I.1993), and *In re Bank of New England,* 134 B.R. 450, we find that:

■ (a) $572.38 for messengers and Federal Express is disallowed, as the Applicant has not described or explained why such expenses were "required by orders of notice or other deadlines not capable of less expensive satisfaction." *Id.* at 458; *see also 321 S. Main,* 155 B.R. at 43;

(b) $175.30 for travel to Rhode Island is disallowed, as it is completely lacking in de-

tail; *see In re Bank of New England,* 134 B.R. at 454;

■ (c) $771.45 for computer expenses including personnel time, supplies, and maintenance is disallowed because such expenses are clearly in the nature of overhead. *See 321 S. Main,* 155 B.R. at 43; and

■ (d) $337.50 for "secretarial overtime" is unexplained and unjustified as an exception to being categorized as office overhead. *See Id.*

Accordingly, based on the forgoing discussion, and upon examination of the application in its entirety, with particular attention to the entries in the attached appendixes, the application of Bingham, Dana & Gould is ALLOWED in the amount of $26,479,[3] with disbursements in the amount of $2,252.

3) The requests of Murphy & Murphy suffer from similar shortcomings, and we find here also that there are three major problems with the applications as filed: (a) lumping; (See Exhibit C); (b) billing for items that we consider overhead and/or administrative expenses, and which should be included in the professionals' hourly rate; (See Exhibit D); and (c) duplication of services, especially in the area of excessive conferencing with co-counsel. (See Exhibit E).

The entries listed in exhibits C, D, and E are from Murphy & Murphy's September 1992, Application. However, in looking at their February 1993 application we see many entries with similar deficiencies. In light of the entire record in this case, and based upon the same reasoning and authority referenced in the application of Bingham, Dana & Gould, we find that a conservative reduction is twenty-five percent, as to each application. Therefore, Murphy & Murphy's request for the balance of its September 1992 Fee Application is DENIED, and its February 1993 Application is ALLOWED in the amount of $28,389.

■ Regarding Murphy & Murphy's expenses, the entries of $350 for Gustave J.S. White Real Estate;[4] $52.31 telephone and

---

3. $55,839 - 45% ($25,128) = $30,711.
   $30,711 less estimated time ($1,588) = $29,123.
   $29,123 less summer associates ($2,644) = $26,479.

4. As to this item, the applicant may submit supporting documentation, within 10 days.

fax charges (8/8/92—9/7/92); and $59.18 for fax charges between 9/8/92 and 1/9/93, are DISALLOWED, since no information is provided as to their necessity and/or reasonableness. According to *321 South Main Street*, 155 B.R. at 43, faxes are allowed at fifteen cents per page, plus the cost of the outgoing phone call. With the data supplied, we cannot determine the number of pages involved, or whether the phone calls are included in these charges. The Federal Express charge of $9.00 is also DISALLOWED. *See Id.* Accordingly, expenses are APPROVED in the total amount of $533.39.

Enter Judgment consistent with this opinion.

*Exhibit A*

*Bingham, Dana, & Gould*

*Lumping:*

Based upon the description of services in the application, each of the following entries violates the rule against lumping: 4/15/92 (.5 hrs); 4/17/92 (7.1 hrs.); 4/20/92 (9.4 hrs., 1.7 hrs.); 4/21/92 (4.5 hrs.); 4/22/92 (2.9 hrs., 7.2 hrs., 7 hrs.); 4/23/92 (3.3 hrs., 11.2 hrs., 7 hrs.); 4/24/92 (1.2 hrs., 3.2 hrs.); 4/27/92 (8.3 hrs., 4.7 hrs.); 4/28/92 (3.8 hrs., 7.2 hrs.); 4/30/92 (1.5 hrs); 5/1/92 (1 hr.); 5/4/92 (2.7 hrs.); 5/5/92 (.8 hrs.); 5/7/92 (2.5 hrs., 1.2 hrs.); 5/8/92 (1 hr., 2 hr.); 5/11/92 (4.8 hrs.); 5/19/92 (1.1 hrs.); 5/26/92 (1.8 hrs.); 5/29/92 (.3 hrs.); 6/1/92 (4.2 hrs.); 6/2/92 (1.7 hrs.); 6/5/92 (1.6 hrs., 2.3 hrs.); 6/12/92 (1.4 hrs.); 6/15/92 (.5 hrs., 1.2 hrs.); 6/18/92 (1.3 hrs.); 6/19/92 (4.3 hrs.); 6/22/92 (1 hr.); 6/24/92 (.6 hrs., .9 hrs.); 6/25/92 (.8 hrs.); 6/29/92 (1.5 hrs.); 7/6/92 (2.8 hrs., 1.9 hrs.); 7/7/92 (2.5 hrs., 1.9 hrs., .9 hrs.); 7/9/92 (1.6 hrs., 6.5 hrs.); 7/10/92 (1.4 hrs.); 7/13/92 (4.1 hrs.); 7/14/92 (2.1 hrs.); 7/28/92 (1.2 hrs.); 7/29/92 (1.7 hrs.), 8/6/92 (2.8 hrs); 8/10/92 (3.3 hrs.); 8/12/92 (2 hrs.); 8/14/92 (1 hr.); 8/19/92 (.8 hrs.); 8/21/92 (1.1 hrs.); 8/24/92 (.7 hrs.); 8/25/92 (1.9 hrs.); 8/27/92 (1.3 hrs., 2.5 hrs.); 8/28/92 (1.7 hrs., 2.2 hrs.); 8/31/92 (1.6 hrs.); 9/3/92 (.9 hrs.); 9/9/92 (.6 hrs., 2.2 hrs.); 9/10/92 (2.3 hrs., 3.5 hrs.); 9/11/92 (1.3 hrs.); 9/21/92 (1.8 hrs, 1.4 hrs.); 9/22/92 (.4 hrs., 1.8 hrs.); 9/23/92 (1.1 hrs.); 9/24/92 (.6 hrs.); 9/30/92 (.7 hrs.); 10/1/92 (1.2 hrs., .4 hrs.); 10/5/92 (6.5 hrs.); 10/7/92 (.5 hrs.); 10/8/92 (.8 hrs.); 10/9/92 (.5 hrs.); 10/10/92 (.2 hrs); 10/14/92 (.6 hrs., .8 hrs.); 10/19/92 (1.5 hrs.); 10/22/92 (1 hr.); 10/27/92 (1.7 hrs.); 10/28/92 (.9 hrs.); 11/3/92 (3.4 hrs.); 11/4/92 (.4 hrs.); 11/9/92 (1.2 hrs., 2.7 hrs.); 11/10/92 (1 hr., 1.4 hrs.); 11/13/92 (.9 hrs.); 11/17/92 (1.2 hrs.); 11/18/92 (1.2 hrs.); 11/19/92 (.5 hrs.); 11/20/92 (.6 hrs., .2 hrs.); 12/2/92 (.5 hrs.); 1/4/93 (2.1 hrs.); 1/5/93 (6 hrs.).

*Exhibit B*

*Bingham, Dana, & Gould*

*Excessive interoffice and intra-office conferences and duplicative service:*

The following entries contain charges for inter-office conferences and conferences with co-counsel, in what appears to be a clear pattern of duplication of services, without justification for said duplication or overlapping: 4/2/92 (.2 hrs); 4/8/92 (.8 hrs.); 4/15/92 (.5 hrs); 4/17/92 (7.1 hrs., .1 hrs.); 4/20/92 (9.4 hrs., 1.7 hrs.); 4/21/92 (4.5 hrs., 1.2 hrs.); 4/22/92 (2.9 hrs., 7.2 hrs., 7 hrs.); 4/23/92 (3.3 hrs., 11.2 hrs., 7 hrs.); 4/24/92 (1.2 hrs., 1.2 hrs., 3.2 hrs., 2 hrs.); 4/27/92 (2.5 hrs., 8.3 hrs., 4.7 hrs.); 4/28/92 (3.8 hrs., 7.2 hrs.); 4/29/92 (.1 hr.); 4/30/92 (1.5 hrs); 5/4/92 (2.7 hrs.); 5/5/92 (.8 hrs.); 5/6/92 (.3 hrs); 5/7/92 (2.5 hrs., 1.2 hrs.); 5/8/92 (1 hr., 2 hr., .6 hrs); 5/11/92 (4.8 hrs.); 5/12/92 (.2 hrs.); 5/18/92 (.9 hrs.); 5/19/92 (1.1 hrs.); 5/20/92 (.3 hrs.); 5/26/92 (1.8 hrs., .3 hrs., .7 hrs.); 5/29/92 (.3 hrs.); 6/1/92 (.6 hrs., 4.2 hrs.); 6/2/92 (1.7 hrs., .5 hrs, .4 hrs.); 6/4/92 (1 hr.); 6/5/92 (1.6 hrs., 2.3 hrs.); 6/12/92 (1.4 hrs.); 6/15/92 (.5 hrs., 1.2 hrs.); 6/16/92 (.2 hrs.); 6/18/92 (.1 hrs., 1.3 hrs.); 6/19/92 (4.3 hrs.); 6/24/92 (.6 hrs., .9 hrs.); 6/25/92 (.2 hrs., .8 hrs.); 6/29/92 (1.5 hrs.); 7/6/92 (2.8 hrs., 1.9 hrs.); 7/7/92 (2.5 hrs., 1.9 hrs., .9 hrs.); 7/8/92 (.4 hrs); 7/9/92 (1.6 hrs., .4 hrs., 6.5 hrs.); 7/10/92 (1.4 hrs., .6 hrs.); 7/13/92 (4.1 hrs., 1.6 hrs.); 7/14/92 (2.1 hrs.); 7/15/92 (.4 hrs., .5 hrs.); 7/16/92 (.8 hrs.); 7/17/92 (.3 hrs., .4 hrs.); 7/29/92 (1.7 hrs.), 8/5/92 (1 hr.); 8/6/92 (2.8 hrs); 8/7/92 (.1 hrs., .4 hrs.); 8/12/92 (2 hrs.); 8/13/92 (.2 hrs.); 8/14/92 (1 hr.); 8/19/92 (.8 hrs.); 8/21/92 (1.1 hrs.); 8/24/92 (.7 hrs.); 8/25/92 (1.9 hrs., .4 hrs.); 8/26/92 (.1 hrs.); 8/27/92 (1.3 hrs., 2.5 hrs.); 8/28/92 (1.7 hrs., 2.2 hrs.); 8/31/92 (1.6 hrs.);

9/1/92 (.8 hrs., .3 hrs.); 9/3/92 (.9 hrs.); 9/8/92 (.3 hrs.); 9/9/92 (.6 hrs., 2.2 hrs.); 9/10/92 (2.3 hrs., 3.5 hrs.); 9/11/92 (1.3 hrs., 2 hrs.); 9/14/92 (.7 hrs.); 9/21/92 (1.8 hrs, 1.4 hrs.); 9/22/92 (.4 hrs.); 9/24/92 (.6 hrs.); 9/28/92 (.2 hrs.); 9/30/92 (.7 hrs.); 10/1/92 (.4 hrs.); 10/2/92 (.5 hrs.); 10/5/92 (6.5 hrs.); 10/8/92 (.8 hrs.); 10/9/92 (.5 hrs.); 10/14/92 (.6 hrs., .8 hrs.); 10/15/92 (.4 hrs.); 10/19/92 (1.5 hrs.); 10/23/92 (.8 hrs.); 10/27/92 (1.7 hrs.); 10/28/92 (.9 hrs.); 10/30/92 (.8 hrs.); 11/2/92 (.8 hrs., 1 hr.); 11/3/92 (.8 hrs., 3.4 hrs.); 11/4/92 (.2 hrs., .4 hrs.); 11/5/92 (1 hr., .5 hrs.); 11/9/92 (1.2 hrs., 2.7 hrs.); 11/10/92 (1 hr., 1.4 hrs.); 11/13/92 (.9 hrs.); 11/16/92 (.5 hrs., .2 hrs.); 11/17/92 (1.2 hrs.); 11/18/92 (1.2 hrs.); 11/19/92 (1 hr., .5 hrs.); 11/20/92 (.6 hrs., .2 hrs.); 12/2/92 (.5 hrs., .2 hrs.); 12/8/92 (.3 hrs); 12/9/92 (1 hr.); 12/17/92 (.2 hrs.); 12/18/92 (.2 hrs.); 12/28/92 (.3 hrs.); 12/30/92 (.3 hrs.); 12/31/92 (.9 hrs.); 1/4/93 (2.1 hrs., .6 hrs.); 1/5/93 (6 hrs., .2 hrs.).

*Exhibit C*

*Murphy & Murphy*

*Lumping:*

The following entries contain services that are lumped and therefore difficult and/or impossible to evaluate: 4/20/90 (2.5 hrs.); 4/21/92 (3.5 hrs., 1.5 hrs.); 4/22/92 (6.9 hrs., .5 hrs.); 4/23/92 (3.8 hrs.); 4/24/92 (2.1 hrs, 1.5 hrs.); 4/26/92 (.8 hrs.); 4/27/92 (4.4 hrs.); 4/28/92 (6.1 hrs.); 4/29/92 (1.1 hrs., 1.9 hrs.); 4/30/92 (.3 hrs., .8 hrs.); 5/1/92 (2.6 hrs., 1.2 hrs.); 5/6/92 (1.8 hrs., 1.4 hrs.); 5/7/92 (.5 hrs.); 5/8/92 (2 hrs.); 5/12/92 (1 hr., 1 hr.); 5/13/92 (.5 hrs.); 5/14/92 (.5 hrs.); 5/15/92 (1 hr.); 5/18/92 (3.2 hrs., 1 hr., .7 hrs.); 5/20/92 (3 hrs., 1 hr.); 5/21/92 (2.8 hrs.); 5/22/92 (1 hr.); 5/26/92 (.6 hr.); 5/28/92 (1 hr.); 5/29/92 (.7 hrs.); 5/30/92 (.5 hrs.); 6/1/92 (2 hrs.); 6/4/92 (2 hrs., 1.1 hrs.); 6/5/92 (2 hrs.); 6/11/92 (.5 hrs.); 6/12/92 (2 hrs., 1.8 hrs., .6 hrs.); 6/15/92 (2 hrs., 1.1 hrs.); 6/16/92 (2 hrs.); 6/17/92 (1.6 hrs.); 6/18/92 (1.5 hrs.); 6/19/92 (.5 hrs.); 6/22/92 (.4 hrs.); 6/23/92 (3.5 hrs.); 6/25/92 (.5 hrs., .8 hrs.); 6/29/92 (1.3 hrs.); 6/30/92 (.6 hrs.); 7/2/92 (1 hr.); 7/6/92 (5 hrs.); 7/8/92 (¼ hrs.); 7/9/92 (2.3 hrs.); 7/10/92 (3.5 hrs.); 7/13/92 (.7 hrs.); 7/14/92 (.6 hrs.); 7/15/92 (1.5 hrs., 1.3 hrs.); 7/16/92 (4.5 hrs.); 7/17/92 (1.5 hrs.); 7/20/92 (7 hrs.); 7/22/92 (.9 hrs., 2.5 hrs.); 7/23/92 (1.8 hrs.); 7/27/92 (2.7 hrs., .5 hrs., .6 hrs.); 7/29/92 (.9 hrs.); 7/30/92 (.5 hrs.); 8/3/92 (.9 hrs.); 8/4/92 (.6 hrs., 1.5 hrs.); 8/5/92 (1.7 hrs.); 8/6/92 (2 hrs., 2.8 hrs.); 8/7/92 (1.5 hrs., 3.8 hrs.); 8/11/92 (1 hr.); 8/12/92 (.4 hrs.); 8/13/92 (1.8 hrs., 1.9 hrs.); 8/14/92 (.7 hrs.); 8/18/92 (.7 hrs.); 8/19/92 (1 hr.); 8/20/92 (1 hr.); 8/21/92 (.6 hrs.); 8/24/92 (1.1 hrs.); 8/25/92 (.5 hrs.); 8/26/92 (1 hr.); 8/27/92 (3.5 hrs.); 8/28/92 (2 hrs.); 8/31/92 (.6 hrs., 2 hrs.).

*Exhibit D*

*Murphy & Murphy*

*Administrative Tasks:*

4/22/92 (.5 hrs.); 4/23/92 (5.5 hrs., 3.8 hrs.); 4/28/92 (.1 hrs.); 5/1/92 (1.2 hrs.); 5/11/92 (.5 hrs.); 5/27/92 (.1 hrs.); 6/4/92 (2 hrs.); 6/11/92 (2.8 hrs.); 6/12/92 (1.8 hrs.); 6/15/92 (2 hrs., 1.2 hrs.); 6/16/92 (2 hrs.); 6/23/92 (1.5 hrs.); 7/7/92 (.2 hrs.); 7/14/92 (.6 hrs.); 7/23/92 (.1 hrs.); 8/4/92 (1 hr.); 8/6/92 (2 hrs.); 8/11/92 (1 hr.); 8/14/92 (.5 hrs.); 8/27/92 (.1 hr.).

*Exhibit E*

*Murphy & Murphy*

*Excessive Co-counsel conferences and duplicative service:*

4/21/92 (3.5 hrs., 1.5 hrs.); 4/22/92 (6.9 hrs., .5 hrs.); 4/24/92 (1.5 hrs.); 4/27/92 (4.4 hrs.); 4/28/92 (6.1 hrs., .3 hrs.); 4/30/92 (.3 hrs.); 5/8/92 (2 hrs.); 5/18/92 (1 hr.); 5/20/92 (3 hrs., 1 hr.); 5/22/92 (1 hr.); 6/5/92 (2 hrs.); 6/12/92 (.6 hrs.); 6/15/92 (1.1 hrs.); 6/16/92 (2 hrs.); 6/22/92 (.4 hrs.); 6/25/92 (.5 hrs.); 7/9/92 (2.3 hrs.); 7/13/92 (.7 hrs., 1.1 hrs., 2 hrs.); 7/16/92 (1.6 hrs., 1 hr.); 8/4/92 (1.5 hrs.); 8/5/92 (.5 hrs.); 8/6/92 (2 hrs., 2.8 hrs.); 8/7/92 (3.8 hrs.); 8/12/92 (.5 hrs.); 8/18/92 (.7 hrs.); 8/24/92 (1.1 hrs.); 8/26/92 (1 hr.); 8/27/92 (3.5 hrs.).