In re William J. STOECKER, Debtor.

**Bankruptcy No. 89 B 02873.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Aug. 15, 1990.

Robert Radasevich, Neal, Gerber & Eisenberg, Chicago, Ill., for trustee.

Thomas Raleigh, Raleigh & Helms, Chicago, Ill., Trustee.

Jay A. Steinberg, Hopkins & Sutter, Chicago, Ill., Trustee, for The Grabill Corp., Windsor–Hamilton, Ltd., Foxxford Group, Ltd., Camdon Companies, Inc. and The Techna Group, Ltd.

Gerald F. Munitz, Michael P. O'Neil, Winston & Strawn, Chicago, Ill., Amy R. Wolf, Wachtell, Lipton, Rosen & Katz, New York City, for The Connecticut Bank and Trust Co., N.A.

Norman B. Newman, Much, Shelist Freed Denenberg Ament & Eiger, P.C., Chicago, Ill., for Westbank Nat. Banking Corp.

MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the application of Thomas E. Raleigh (the "Trustee"), pursuant to 11 U.S.C. §§ 326, 330, and 331 and Federal Rule of Bankruptcy Procedure 2016, for allowance of final compensation as Chapter 11 Trustee in the amount of $502,148.62 and reimbursement of expenses in the sum of $1,736.11. Proper notice was given to all creditors and parties in interest pursuant to Federal Rule of Bankruptcy Procedure 2002. Objections were filed by Westbank National Banking Corporation ("Westbank") and The Connecticut Bank and Trust Company, N.A. ("CBT"). A hearing was held on the application and the matter was subsequently taken under advisement.

The issue is whether in a large Chapter 11 case a trustee should be awarded the maximum compensation allowable under the Bankruptcy Code when the services performed have not been objected to as unnecessary, but the reasonableness of the amount requested is challenged. The short answer and holding is that maximum compensation should be allowed to a Chapter 11 trustee in a successful reorganization when maximum results and benefits are achieved. In an attempted, but failed reorganization case that is converted to Chapter 7, the maximum allowable compensation should not be awarded or expected. The Trustee has done a highly commendable job in a difficult and complex case. Therefore, the Court allows most, but not all, of the requested compensation in the sum of $418,307.18 and reimbursement of expenses in the amount of $1,736.11.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this fee application pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## II. FACTS AND BACKGROUND

Some of the facts, background and history of this case are contained in earlier Opinions of the Court. See In re Stoecker, 114 B.R. 965, 967–968 (Bankr.N.D.Ill.1990); In re Stoecker, 103 B.R. 182, 184–185 (Bankr.N.D.Ill.1989). Additional background information concerning the related corporate cases is contained in other Opinions of the Court. See In re Grabill Corp., 110 B.R. 356, 358 (Bankr.N.D.Ill.1990); In re Grabill Corp., 103 B.R. 996, 997–998 (Bankr.N.D.Ill.1989).

An involuntary Chapter 11 petition was filed against the Debtor on February 21, 1989. On March 8, 1989, after a full evidentiary hearing, the Court ordered the appointment of a trustee. Shortly thereafter on March 14, 1989, the Court entered an order for relief under Chapter 11. The following day, the Court entered an order requiring the Debtor to file a plan of reorganization and disclosure statement by July 12, 1989. The U.S. Trustee subsequently appointed the Trustee on March 20, 1989.

The Debtor did not file a plan or disclosure statement. One creditor filed a plan and disclosure statement, to which numerous objections were filed. After the Court sustained some of the objections to the adequacy of that disclosure statement, no further plans or disclosure statements were filed. Due to a lack of movement and progress towards reorganization, the Court sua sponte issued an order to show cause why the case should not be converted to Chapter 7. On February 26, 1990, pursuant to 11 U.S.C. § 1112(b)(1)–(4), the case was converted. At the time of the hearing, the Trustee presented his motion for conversion. The estate has been administered as an orderly liquidation of the marshalled assets, concurrently with an intense investigation and review of the prior dealings of the Debtor, pending the sales of estate assets at fair and reasonable prices.

The Trustee previously received interim fee allowances under section 331 in the sums of $110,852.59, $75,294.06 and $176,-688.89. Pursuant to the instant fee application, the Trustee seeks to have the three

prior interim application allowances made final and receive the additional sum of $139,583.22.[1] At the hearing on the fee application, no evidence was presented. Citibank, N.A., the largest single unsecured creditor, supported the Trustee's fee application as did the trustee in the related corporate cases (the "Grabill Trustee"), who concurred with the position taken by the Trustee that the negotiated one and one-half percent fee cap in those cases is not binding in this case. Given the fact that the liquidated asset base in the corporate estates is over four times greater than that of the case at bar, the seemingly facial altruism on the part of the Grabill Trustee is understandable and his support of the instant application will be weighed accordingly.

The Court ordered the Trustee to file a supplemental pleading showing the status of the estate with expected additional asset recoveries and estimated Chapter 7 administrative expenses, due to the potential problem involving subordination of Chapter 11 administration expenses to Chapter 7 administration expenses pursuant to section 726(b). After reviewing the pleading, no problem under section 726(b) appears likely based upon the current cash position of the estate and the anticipated earnings thereon, as well as potential added recoveries, compared with projected expenses of administration.

## III. ARGUMENTS OF THE PARTIES

The Trustee contends that he marshalled and sold substantial assets of the estate without much assistance from the Debtor who never fully cooperated in the administration. The Debtor asserted various constitutional privileges, and as a result, the Trustee spent considerable time and effort in preparing and amending the schedules and locating assets. As Trustee during the Chapter 11 phase of the case, he distributed or turned over to secured and administrative claimants the sum total of $9,955,-558.20 and has turned over to himself as the succeeding Chapter 7 Trustee an additional sum of $6,776,729.32. Thus, under the sliding scale established by section 326(a), the Trustee seeks the maximum allowable fee of $502,148.62.

The Trustee maintains that he and his law firm's staff spent a great deal of time on the case. He claims that he devoted over 2,100 hours of time, and his staff over 1,300 hours of their time, in the approximate one year period following his appointment. The Trustee further asserts that the efforts he and his staff expended on this case were substantial, and perhaps he should have billed his staff's time separately. The Trustee states that he was compelled to devote over ninety percent of his work on this case and is concerned with his future law practice. Moreover, the Trustee contends that some of the sales transactions were structured so that cash did not directly flow into the Trustee's hands to serve as an added basis for compensation. The Trustee further argues that the maximum compensation should be allowed because executives in charge of multimillion dollar corporations can obtain compensation at annual salaries of $500,000.00 or more.

The Trustee notes that under a lodestar approach, at his current hourly rate of $190.00 for attorney's services, he would bill his time at over $400,000.00. Although the Trustee concedes that the lodestar approach is a relevant factor for the Court to consider, he argues that it is only one of many factors to be considered including: benefit to the estate; time expended; intricacies of the problems encountered, their novelty and difficulty; the amounts involved; and the opposition encountered. The Trustee concludes that he is entitled to maximum compensation under section 326(a) in light of rulings by other judges of this Court and that even on a lodestar approach, the requested compensation

---

1. The actual difference which could be awarded by the Court under section 326(a) is $139,-313.08. The approximate $270.14 variance is probably attributable to an oversight in failing to include the fifteen percent on the first $1,000.00 or $150.00, plus the six percent on the next $2,000.00 or $120.00 for a total maximum compensation on the first $3,000.00 collected of $270.00.

would average approximately $230.00 per hour, roughly equivalent to the rates charged by some of the senior attorneys representing parties in this case and the related corporate cases. In short, the Trustee concludes that he took the case from hopeless obscurity and disruption to relative manageability and brought order to chaos despite obtrusive conduct of the Debtor, thereby entitling him to maximum compensation.

Two objections were made to the fee application. Westbank preserved the record by objecting until an accounting was provided. It asserted a secured lienholder status. The secured portion of its claims have been substantially paid through sales of the underlying security. The Trustee currently holds large sums for which an accounting of sales proceeds has yet to be completed. At the hearing, counsel for Westbank stated that the accounting was in process and that it no longer wished to stand on its objection.

CBT, on the other hand, argues that unsecured creditors have not received any distribution or dividend in the case. Rather, only secured creditors and the professionals holding allowed administrative priority claims have received the approximate ten million dollars distributed thus far, or roughly sixty percent of the estate assets recovered to date. CBT therefore asserts that the maximum three percent under section 326(a) should not be awarded to the Trustee in light of its concern that most of the remaining assets collected during the Chapter 7 phase of the case could be expended on additional expenses of administration, leaving an insignificant dividend for the unsecured creditors. CBT concludes it is unfair for the unsecured creditors to effectively bear the costs of administration at maximum rates when the secured creditors have been the principal beneficiaries, and have not borne their respective fair shares of the costs of administration. CBT cites an earlier unrelated Opinion of the Court for the proposition that the statutory cap imposes an outer limit on allowable compensation to a trustee and is not a grant or entitlement to maximum fees. CBT also cites as precedent the negotiated and Court approved one and one-half percent cap agreed to by the Grabill Trustee.

CBT further contends that the Trustee has retained the assistance of many qualified and expensive professionals including attorneys, accountants, investment bankers, auctioneers, realtors, and appraisers. CBT states that the Trustee is likely to receive additional compensation for his services as Chapter 7 Trustee. CBT concludes that a lodestar approach is a proper means to quantify reasonable and necessary compensation for the Trustee's services. Accordingly, CBT recommends that the amount of $382,286.00 should be allowed, based on the Trustee's time expended, billed at his regular hourly rate, as charged for services as an attorney. This amount is slightly in excess of two and one-quarter percent of the estate's liquidated asset base turned over to date. CBT does not question or dispute the amount of time the Trustee has devoted or the necessity of any of the services rendered. CBT disputes the propriety of the Trustee's analogy to corporate executive compensation in the determination of his fees.

The Trustee replies that a purely lodestar approach is inappropriate. The Trustee cites authority for the proposition that the amounts turned over to the successor Chapter 7 trustee are appropriately included in the calculation of what a Chapter 11 trustee may use for determination of the maximum fee allowable under section 326(a). Moreover, the Trustee replies that some of the secured creditors who have received distributions on their secured claims have agreed to reimburse the estate for section 506(c) claims attendant to the sales, and pay fees to the estate for those services the Trustee performed which benefited them. Furthermore, the Trustee asserts that the agreement of the Grabill Trustee in the corporate cases is not binding precedent. The Trustee concludes that the Court should first determine an appropriate fee under section 330 and then reduce that amount if necessary to the cap imposed by section 326(a).

IV. STANDARDS AND AUTHORITIES

The principal controlling statutory authorities are 11 U.S.C. §§ 326(a) and 330(a)(1) and (2) which provide as follows:

§ 326. Limitation on compensation of trustee.

(a) In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed fifteen percent on the first $1,000 or less, six percent on any amount in excess of $1,000 but not in excess of $3,000, and three percent on any amount in excess of $3,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

11 U.S.C. § 326(a).

§ 330. Compensation of officers.

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1) and (2).

Section 330 prescribes the statutory standards for allowance of compensation to all professional persons. In contrast, section 326 caps the maximum amount of compensation that may be awarded to Chapter 7 and 11 trustees. Sections 330(a) and 326(a) are independent of one another. *In re Orthopaedic Technology, Inc.*, 97 B.R. 596, 601 (Bankr.D.Colo.1989).

The Court has wide discretion in reviewing fee applications. *In re U.S. Golf Corp.*, 639 F.2d 1197, 1201 (5th Cir.1981). The Trustee bears the burden of proof in all matters concerning his fees. *In re Werth*, 32 B.R. 442, 444 (Bankr.D.Colo. 1983). The Court may award a trustee less than the statutory fee pursuant to section 326(a). Section 326(a) sets a ceiling on a trustee's fees, and does not create an entitlement to a commission in that amount. *In re Roco Corp.*, 64 B.R. 499, 502 (Bankr. D.R.I.1986). Criteria for setting trustee fees under section 330 have closely resembled the factors used for awarding attorney fees. *In re Garland Corp.*, 8 B.R. 826, 829–832 (Bankr.D.Mass.1981). The functions performed by trustees are substantially different from those of the attorneys who represent them. *In re Rauch*, 110 B.R. 467, 473 (Bankr.E.D.Cal.1990); *In re Greenley Energy Holdings, Inc.*, 102 B.R. 400 (E.D.Pa.1989). The same statutory standards are used under section 330 to determine fees for not only attorneys and trustees, but all other professional persons employed pursuant to section 327. *See generally* 2 *Collier on Bankruptcy*, ¶ 330.05[2] (15th ed. 1989).

Although section 330(a) sets the statutory criteria for allowance of trustee compensation, where the same individual is both Chapter 11 and Chapter 7 trustee, the Court may exercise its discretion to award less than the statutory maximum of section 326(a). *In re Dinsmore Tire Center, Inc.*, 81 B.R. 136, 137 (Bankr.S.D.Fla.1987); *In re Financial Corporation of America*, 114 B.R. 221 (9th Cir.BAP 1990). A Chapter 11 trustee is to be compensated for work performed in carrying out the business of the estate, in contrast to the Chapter 7 trustee to be compensated for tasks pursuant to liquidation of the estate. Both trustees theoretically perform different services, thus resulting in separate fee awards. *In re Financial Corporation of America, Id.* One problem in this case is that the theo-

retical distinction between Chapter 11 & 7 trustee functions is somewhat blurred.

■ *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974) sets forth several factors to be considered when reviewing fee applications.[2] Some courts reject the *Johnson* approach and find that the salient factor is the time expended. This lodestar analysis reviews compensation based primarily upon multiplying the number of hours spent by the professional by the hourly rate. Consideration of a lodestar factor is an important one to consider. *See Southwestern Media, Inc. v. Rau*, 708 F.2d 419, 425–426 (9th Cir.1983); *Rauch*, 110 B.R. at 473. It is only one of the *Johnson* factors, albeit a very important one, which the Court considers in making an appropriate determination of what is reasonable and necessary compensation under section 330(a), subject to the cap of section 326(a).

## V. DISCUSSION

■ All of the *Johnson* factors must be considered in arriving at reasonable compensation for the Trustee, rather than isolating the process through merely a lodestar analysis with adjustments for other factors. The Court agrees with CBT, as conceded by the Trustee, that a lodestar analysis is an appropriate part of the overall process to be employed by the Court in exercising the broad discretion afforded it under sections 326(a) and 330(a).

■ Turning to the twelve *Johnson* factors, the Court has considered several of them to be of little bearing in evaluating the fee application at bar. The fifth, sixth, and twelfth factors provide little assistance. There is no real customary fee awarded in Chapter 11 cases of this size and complexity especially in the relatively rare case when a trustee is appointed for cause under section 1104(a). Moreover, the

Trustee's fees are not fixed or contingent. In a broader sense, any trustee's fees are contingent to the extent of the amount of assets administered. Awards in similar cases are of minimal assistance because each application must be weighed on its own merits. Therefore, the compensation agreement approved for the Grabill trustee in the related corporate cases is not helpful or binding. The analogy to corporate executive compensation is also imperfect. There is no evidence in the record to support such arguments. More importantly, such highly paid executives are usually employed by profitable companies who have no need of Chapter 11 relief. Businesses that are failing usually cannot afford to continue to pay enormous salaries to their CEOs. Consequently, a Chapter 11 trustee should not expect to receive compensation commensurate to that of a CEO of a successful Fortune 500 company.

The first *Johnson* factor of time and labor involved is significant. The Trustee expended over 2,100 hours engaged in the herculean task of unraveling the Debtor's financial affairs, discovering how they intertwined with the related corporate estates, while marshalling, preserving and selling assets over the approximate year's time the case remained in Chapter 11. The lodestar arguments of the parties are important considerations as part of the analysis under this factor. The second factor, the skill required to perform the services is likewise important. The parties have not asserted that the Trustee's duties were easy to perform given the complexity of the case, or that he rendered other than highly skillful services. Hence, his services should be substantially compensated notwithstanding the fact that his law office staff cannot be separately compensated.

■ In marked contrast to the law firms, accounting firms, and investment banking

---

**2.** The twelve Johnson factors are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717–719.

firms retained in this case, only the Trustee himself was appointed as trustee. Only he can perform the statutory duties imposed upon him by the Code. The other members of his staff were not appointed as co-trustees nor were any of them sought to be retained under section 327 as additional professional persons to render accounting, paralegal or other assistance. Their services to the Trustee are therefore not properly compensable from the estate. Absent a prior order authorizing their retention, there is no statutory basis for awarding separate compensation. It therefore is of no consequence whether they performed trustee duties or whether their services were purely professional, as distinct from secretarial or clerical. This result is consistent with the result reached by the Court in other cases involving the interplay between sections 327 and 330. *See In re Grabill Corp.*, 113 B.R. 966, 971 (Bankr.N. D.Ill.1990); *In re Peoples Sav. Corp.*, 114 B.R. 151, 155 (Bankr.N.D.Ill.1990). Furthermore, the Trustee had the able and expert assistance of attorneys, accountants, investment bankers, appraisers, and auctioneers whose allowed fees during the Chapter 11 phase of the case have cost the estate over two million dollars.

With regard to the second factor, the Court notes that during the history of the case there were a small number of novel and difficult legal questions. The Trustee, however, has encountered many investigative, logistical and related administrative problems, exacerbated by the Debtor's lack of cooperation and privilege assertion. These problems, while time consuming and frustrating, are neither novel nor unusually difficult from a Trustee's perspective.

The Trustee argues the fourth *Johnson* factor is of great significance. Due to the size and complexity of this case, the Trustee contends he was precluded from accepting other employment. The Court does not agree that this factor should be given the weight urged by the Trustee. Although the Trustee may have had to turn away other business due to the fact he had to devote approximately ninety percent of his time to this case, it is axiomatic that there are only 8,760 hours in one year. The Trustee could only work within that parameter in one year on this case, or many other smaller cases. With his conscious choice to accept the appointment in this very large and complex case, the Trustee knew that he would be restricted in the amount of his other work. That is the risk any trustee takes upon acceptance of appointment in a large or complex case. Although the Trustee is understandably worried about future work, if his services are of the quality and excellence he has demonstrated in this case, then he should not lack for future employment.

Other *Johnson* factors are of some, but not great significance. The seventh and the eleventh factors relating to the time limitations imposed or the circumstances and the nature of the Trustee's relationship to the estate have some bearing on the determination of the appropriate amount of fees. The Trustee had almost a year to attempt a reorganization of the estate, but took no action towards proposing a plan. Although the Court recognizes that it took the Trustee a number of months of intensive investigation to discover most of the relevant information relating to the condition of the estate, and that the Trustee filed a motion for substantive consolidation of the Debtor's estate with the corporate estates which was ultimately resolved, no movement toward reorganization was taken. As the statutory representative of the estate, the Trustee was in the best position to determine at an early date whether the estate could possibly be reorganized. In the Trustee's Amended Second Report to the Court dated May 23, 1989, he indicated that there was no hope for a reorganization under Chapter 11. He stated that the reason he had not moved to convert the case was due to the fact he was advised that a conversion would have a deleterious effect upon the operating companies. The Trustee further stated that once the companies were sold, he would move for immediate conversion. It should not have been left to the Court to set a hearing to show cause why the case should not be converted to Chapter 7, after almost a year from the filing of the petition and entry of the order

for relief, and nine months after the Trustee's report.

The remaining *Johnson* factors are of pivotal importance. The eighth, ninth, and tenth factors with particular emphasis on the eighth factor concerning the amount of assets administered and the results obtained are vital. The aggregate amount of liquidated cash assets administered by the Trustee to date, exceeds sixteen million dollars with twice as much estimated to be liquidated and sold in the future. As a reorganization, the Chapter 11 phase of the case resulted in failure, while good results under the circumstances have obtained, viewing the case as an orderly liquidation and simultaneous preservation of assets. The Trustee is to be commended for a most difficult job well done. Notwithstanding the difficulties the Trustee encountered, it can hardly be said that this case was undesirable. It has provided the Trustee with a great amount of work which has generated significant fees. The challenges posed the Trustee, coupled with a large asset base, makes this case extremely desirable.

■ The Trustee cites several cases which are distinguishable from the case at bar. First, he cites *In re McKenna*, 93 B.R. 238, 243 (Bankr.E.D.Cal.1988) for the proposition that a close correlation between attorney's fees and trustee compensation is not a sufficient reason to reduce the compensation from the statutory maximum. Economic incentives for trustees are important factors in attracting able persons to serve as trustees. However, *McKenna* is inapposite. It involved a Chapter 7 trustee who sought less than $3,000.00 in compensation, in his dual capacity as trustee and attorney for the trustee in a small estate. In the instant case, the Trustee has retained separate counsel in a very large and complicated estate. Notions of economic incentives to attract competent trustees to serve in small cases, thereby rationalizing reluctance to allow less than the statutory maximum, are especially inappropriate in large asset cases where there is ample cash to pay the huge fees requested by all professionals, including the trustee. *Cf.* Lopucki, *Strategies For Creditors In Bankruptcy Proceedings*, § 6.7, ¶ 1 (1985). In large asset cases, the Court must be concerned that the allowed fees of the professionals do not exceed reasonable allowances to the effective detriment of those creditors who suffer a low priority under the Code. Estates should not be administered for the principal effective benefit of the administrative priority post-petition creditors at the virtual expense and to the exclusion of any dividends to unsecured pre-petition creditors.

The Trustee also cites *In re Churchfield Management & Invest. Corp.*, 98 B.R. 838 (Bankr.N.D.Ill.1989) and *In re Summit Communities of Florida, Inc.*, 84 B.R. 863 (Bankr.S.D.Fla.1988) for the proposition that other courts have applied the concept of enhancement to attorney fees in rare cases where exceptional results are obtained. The concept of fee enhancement is well known, but has no bearing or support for the Trustee's argument that he should be allowed the statutory maximum under section 326(a). The Trustee has at all times sought the maximum allowable compensation. Consequently, there is nothing to enhance that would be permissible under section 326(a). Moreover, such decisions are based on substantially different facts and are of no precedential value in this matter.

Additionally, the Trustee cites *In re Missionary Baptist Foundation*, 77 B.R. 552, 554 (Bankr.N.D.Tex.1987) concerning the nature of a trustee's duties. In that case, a trustee was allowed maximum compensation where he had successfully converted the debtor's business to profitable operation and distributed seventy percent on unsecured claims. In contrast, the Trustee has done a yeoman's job of selling assets, preserving estate property and related businesses and paying down secured claims, while investigating the Debtor's financial affairs. Nevertheless, he has failed to reorganize the estate or its various businesses and has not paid any dividend to unsecured creditors.

■ Finally, the Trustee argues that if the Court embraces the lodestar approach, the time spent by the Trustee's staff must

be included in the calculation. He cites *In re Hobbs,* 108 B.R. 93 (Bankr.D.Md.1989), *In re Lanier Spa, Inc.,* 99 B.R. 490 (Bankr. N.D.Ga.1989) and *Rauch* for this proposition. In *Hobbs,* the court held that paralegals are to be compensated as paraprofessionals under section 330 and not to be considered as part of a trustee's general overhead clerical expense. The *Hobbs* court was unable to distinguish from the application whether some of the services rendered were in the nature of properly compensable paraprofessional work or services for nondelegable trustee duties that could not be properly compensable as an added amount outside the limits of section 326(a). In *Lanier,* the court denied separate compensation of paralegals who performed trustee duties. The court aptly noted that to allow same would effectively circumvent the limits of section 326(a) and enable the estate to be gouged. Other courts apparently take a differing view and allow paraprofessional compensation for performance of trustee duties in addition to amounts allowed the trustee. *See In re Orthopaedic Technology, Inc.,* 97 B.R. 596 (Bankr.D.Colo.1989); *Cavazos v. Simmons,* 90 B.R. 234 (N.D.Tex.1988). The Court, on the other hand, adheres to its prior ruling stated in *In re Prairie Central Railway Co.,* 87 B.R. 952, 958–959 (Bankr.N.D.Ill. 1988).

The Trustee concludes that he is "entitled" to the maximum compensation allowable under section 326(a). Perhaps the repeated reference to "entitled" is some form of legal Freudian slip resulting from the increasingly apparent mindset of regular practitioners appearing before the bankruptcy courts. The Court is well aware of the express legislative history under the Code favoring commensurate compensation of professionals in bankruptcy proceedings with what they can receive for nonbankruptcy work. H.R.Rep. No. 595, 95th Cong., 1st Sess. 329–330 (1977), U.S.Code Cong. & Admin.News 1978, pp. 6285, 6286. Compensation is only awarded to the extent it is well earned and both reasonable and necessary. The Trustee is only "entitled" to a fair hearing and nonabusive exercise of the wide discretion af-

forded the Court. The Court attributes the references to "entitled" fees to overzealous advocacy on the part of the Trustee's attorneys. Fortunately, the Trustee has done a highly commendable job. Accordingly, the Court will allow a considerable amount of compensation.

After considering all the *Johnson* factors, as well as the other applicable statutory and case authorities, it appears that the parties have established proper parameters or the range of the amount of compensation which the Court should allow: the Trustee at the section 326(a) three percent maximum of $502,148.62 and CBT at a suggested $382,286.00, based on a lodestar calculation, which is in excess of two and one-quarter percent of the estate's liquidated asset base. Both sides have made compelling arguments for their positions. Unfortunately for the Court, the applicable authorities provide no bright line test or formula to precisely decide the appropriate allowance in a wholly objective manner with any arithmetical certainty. Deciding fee applications under the current state of the law is an inherently subjective process made more difficult and time consuming by the wide discretion invested in the Court. There is no scientific method or uniform approach to these sensitive matters which are important to the professionals seeking compensation. Fee applications involve a disproportionately undue amount of the resources and time of the courts. *See Report of the Federal Courts Study Committee,* Part II § 5F, ¶ 1 at 104 (April 2, 1990).

Although the Trustee has done a commendable job, this case remains a failed Chapter 11 reorganization. Dividends were not paid to unsecured creditors and the several businesses of the Debtor have not been successfully reorganized. Therefore, despite the payment of large claims held by some of the secured creditors and the allowance of substantial fees, the underlying goals of Chapter 11 have not been fully achieved. Maximum results justify maximum compensation. Lesser results should produce lesser allowed compensation. The straight lodestar approach sug-

**606**

gested by CBT is not wholly satisfactory. The Trustee was not acting as an attorney representing one client to whom he owed fiduciary duties as an advocate. He served as the statutory representative of the estate and owed fiduciary duties to all interested parties, including the Debtor and the creditors. While the Trustee should not reap a windfall and receive compensation at over $236.00 per hour, his performance warrants something greater than the straight hourly lodestar formula. The Court does not view it an injustice or unduly parsimonious to award the Trustee less than the maximum amount because the Trustee did not obtain the maximum results. After all, other professionals who have represented the Trustee have not received all compensation they have requested. The Court, pursuant to its equitable discretion, hereby awards the Trustee two and one-half percent of the liquidated asset base turned over, or the final sum of $418,307.18. The expenses requested for transportation, lodging and meals incurred in connection with travel are within the previously established guidelines and caps set by the Court. Hence, reimbursement of same will be allowed in full in the sum of $1,736.11.

## VI. CONCLUSION

For the foregoing reasons, the Court hereby allows the Trustee final compensation in the amount of $418,307.18 and authorizes reimbursement of expenses in the sum of $1,736.11. The prior interim allowances of $110,852.59, $75,294.06 and $176,688.89 are hereby made final. The Trustee is authorized to be paid the additional sum of $55,471.64.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.