In re NARRAGANSETT CLOTHING COMPANY.

Joseph B. GARB, Trustee, Appellant,

v.

J. Christopher MARSHALL, United States Trustee, and The Official Committee of Unsecured Creditors, Appellees.

BAP No. RI 96–088.

United States Bankruptcy Appellate Panel of the First Circuit.

June 20, 1997.

Whitton E. Norris, on brief, for appellant.

Eric K. Bradford, Office of U.S. Trustee, Boston, MA, on brief, for appellee J. Christopher Marshall.

Joseph M. DiOrio, Toms River, NJ, and Michelle Ruberto Fonseca, Providence, RI, on brief, for appellee, Official Committee of Unsecured Creditors.

Before GOODMAN, LAMOUTTE and FEENEY, Bankruptcy Judges.

PER CURIAM.

Appellant Joseph B. Garb appeals from the judgment entered on October 7, 1996 pursuant to the bankruptcy court's October 3, 1996 Order Setting Compensation and Compelling Disgorgement (the "Final Fee Order"). The appeal came before the panel for oral argument on May 20, 1997. For the reasons stated below, we affirm the bankruptcy court's Final Fee Order.

## STANDARD OF REVIEW

Appellate courts "independently review the bankruptcy court's decision, applying the 'clearly erroneous' standard to findings of fact and de novo review to conclusions of law." *Grella v. Salem Five Cent Savings Bank*, 42 F.3d 26, 30 (1st Cir.1994) (citation omitted). Bankruptcy courts are accorded wide latitude in determining the reasonableness of professional fees awarded. *Calhoun v. Acme Cleveland Corp.*, 801 F.2d 558, 559 (1st Cir.1986). *See also In re Martin*, 817 F.2d 175, 182 (1st Cir.1987) ("bankruptcy courts have been accorded wide discretion ... in regard to the terms and conditions of the engagement of professionals"). Therefore, unless the appellant demonstrates that the bankruptcy court abused its discretion in determining his compensation, we are bound to defer to the bankruptcy judge's discretion. *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir.1984); *In re Casco Bay Lines, Inc.*, 25 B.R. 747, 753 (1st Cir.BAP 1982).

## BACKGROUND

Narragansett Clothing Company (the "Debtor"), a retail clothing store chain based in Rhode Island, filed a voluntary Chapter 11 petition on February 5, 1990. Joseph B. Garb ("the Trustee") was appointed Chapter 11 Trustee of the Debtor on April 5, 1990.

Prior to his appointment in this case, the Trustee had been a certified public accountant for over twenty five years and served for four years as a Chief Financial Officer of a retail store chain. He operates as a solo practitioner and employs no paraprofessionals or assistants. According to the Trustee, his usual, nonbankruptcy billing rate at all times relevant to this case was $250.00 per hour.

The Trustee operated the Debtor's business for several months with the intention of selling it as a going concern. Through two transactions that occurred in November of 1990 and January of 1991, he sold the assets to J.L. Sanford, Ltd. ("J.L.Sanford") for $3,100,000 in cash and two promissory notes. Sanford Zimmerman ("Zimmerman"), J.L. Sanford's principal stockholder, personally guaranteed one of the promissory notes in the amount of $700,000. In May of 1991, only five months after the sale occurred, J.L. Sanford filed its own voluntary Chapter 11 bankruptcy petition. The Trustee, as an unsecured creditor of J.L. Sanford, received no dividend. He settled his claim against Zimmerman for $50,000 and released Zimmerman from liability as a guarantor of one of the notes.

In January of 1991, the Trustee filed a third amended disclosure statement and a liquidating plan. On January 24, 1991, prior to J.L. Sanford's bankruptcy filing, the Trustee filed an interim fee application through which he sought net compensation totaling $361,963,[1] which amount included a 20% premium for "superior results obtained for the benefit of the unsecured creditors." The court made several interim awards but did not approve the Trustee's request for a premium. Prior to November 4, 1993, the Trustee had received compensation in the amount of $400,000 for fees and $5,711 for expenses. All interim fee awards were made on account and, thus, were subject to final review at the conclusion of the case.

On November 4, 1993, the bankruptcy court issued a Decision and Order in which it stated that, in accordance with its holding in

---

1. This amount represented the Trustee's total interim fee request through February 4, 1991, $461,963, less $100,000 interim compensation previously awarded on October 25, 1990.

*In re Swansea Consolidated Resources, Inc.,* 155 B.R. 28 (Bankr.D.R.I.1993), $200 per hour was the highest hourly rate that it would approve for the Trustee. However, the court stated that many of the services rendered by the Trustee should have been delegated to paraprofessionals and other assistants. Accordingly, the court further reduced the hourly rate that would be allowed to the Trustee to a blended hourly rate of $160.00. As the Trustee was a solo practitioner and had no support staff, the court held that he should have charged a lower rate for performing ministerial tasks such as issuing checks and maintaining cash accounts. The court awarded no additional compensation, leaving the matter of the Trustee's compensation until the conclusion of the case. *See In re Narragansett Clothing Company,* 160 B.R. 477, 483–484 (Bankr. D.R.I.1993).

On June 20, 1996, the Trustee filed a "Post–Confirmation Trustee's Final Report and Account Before Distribution, Request for Compensation and Report on Claims/Proposed Distribution" (the "Final Fee Application") and an "Affidavit of Joseph B. Garb in Support of the Final Application for Compensation and Reimbursement of Expenses as Chapter 11 Trustee and Post–Confirmation Trustee" (the "Affidavit"), through which he sought total compensation of $555,175. The Trustee noted in his Affidavit that, "[p]ursuant to 11 U.S.C. Section 326, my compensation (exclusive of expenses) is limited to not more than $557,062." [2] The United States Trustee and the Official Committee of Unse-

cured Creditors (the "Committee") objected to the Trustee's Final Fee Application.

Through its Final Fee Order, the bankruptcy court noted that the Trustee calculated his fee by multiplying the number of hours he billed, 2,220.7, by his $250.00 hourly rate. The court reduced the Trustee's billable hours by 45.4 hours as no time entries were provided for those hours and, therefore, multiplied 2,174.6 hours by the $160.00 hourly rate that it had previously set. Thus, the court awarded the Trustee total compensation in the sum of $347,936, and ordered him to disgorge the overpayment of $52,064 "to himself as Trustee, for distribution to creditors." [3] *In re Narragansett Clothing Company,* 201 B.R. 30, 32 (Bankr.D.R.I.1996).

## ARGUMENTS OF THE PARTIES

The Trustee appeals the Final Fee Order on grounds that the bankruptcy court abused its discretion by improperly applying a local rate cap. Alternatively, the Trustee argues that, even if a local rate cap were applicable, the court erroneously relied on factual findings made in the *Swansea* case and incorrectly determined that $200 is the maximum hourly rate charged in the local market. Moreover, the Trustee contends that the court, having already applied a local rate cap, erred in reducing the lodestar because the Trustee failed to delegate ministerial tasks. Finally, the Trustee contends that the court accorded disproportionate weight to the bankruptcy of J.L. Sanford and the end result obtained in this case.

The United States Trustee and the Committee maintain that the bankruptcy court

**2.** Section 326(a) sets forth the maximum compensation available to trustees as a commission. In the "Post–Confirmation Trustee's Final Report and Account Before Distribution, Request for Compensation and Report on Claims/Proposed Distribution," the Trustee stated the following:

... [P]ursuant to 11 U.S.C. section 326(a), the maximum commission allowable to the Trustee is $93,346 plus expenses for the post confirmation period and for the pre confirmation period the maximum commissions of $435,467 plus expenses or a total maximum compensation for the pre and post confirmation periods of $528,813 plus expenses $7,934.57 [sic]. I have received $407,511 as interim commission or allowance, and now request the sum of $129,-236.00 as my final commission and reasonable

and necessary expenses incurred in the administration of the bankruptcy estate.

*App.* at 4, p. 2. According to the Trustee's Final Fee Application, his maximum commission would be $536,747.57, including expenses, which sum is less than both (1) the $557,062 commission noted in his Affidavit and (2) the amount of fees computed by multiplying the number of hours worked by the hourly rate requested by the Trustee.

**3.** The court did not require the Trustee to pay interest on the amount disgorged. However, the court noted that any delay by the Trustee in making the distribution would result in the court's reconsideration of whether interest would be required to be paid.

properly adjusted the lodestar to $200 per hour in view of Rhode Island market rates for trustee services. They also contend that the court's calculation of the Trustee's blended hourly rate as $160 was not clearly erroneous because the Trustee performed clerical tasks that should have been delegated to paraprofessionals or assistants. The Committee argues that, by failing to challenge the blended hourly rate until three years after it was set, the Trustee waived his right to dispute the rate.

According to the United States Trustee, the following factors warranted a reduction in either the Trustee's lodestar or hourly rate: (1) unsecured creditors received a 32% dividend, which was significantly lower dividend than the 62% dividend that the Trustee initially projected; (2) the Trustee failed to perform adequate due diligence prior to closing the second of the two-stage sale of the Debtor's assets to J.L. Sanford; and (3) the nonexistence of exceptional services or results in this case, *cf., e.g., In re Public Service Company of New Hampshire,* 160 B.R. 404 (Bankr.D.N.H.1993). Noting that the end result is one factor that courts consider in determining fee applications of professionals, the Committee contends that the lower court justifiably reduced the Trustee's compensation in light of the reduction of the dividend paid to the Debtor's unsecured creditors resulting from the failure of J.L. Sanford.

## DISCUSSION

For the following reasons, we conclude that the bankruptcy court did not abuse its discretion in reducing the Trustee's requested compensation from $250 per hour to $160 per hour.

■ Section 330(a)[4] authorizes the bankruptcy courts to award reasonable compensation for fees and expenses to professionals. However, the court's allowance of reasonable compensation pursuant to § 330 is subject to the maximum commission calculated according to the formula set forth in § 326.[5] In *In re Stoecker,* 118 B.R. 596, 601 (Bankr.N.D.Ill.1990), the court noted that "[s]ection 326(a) sets a ceiling on a trustee's fees, and does not create an entitlement to a commission in that amount" (citation omitted). The maximum compensation allowable under § 326(a) is awarded to a Chapter 11 trustee only in cases in which the result obtained and the benefit realized by the estate are exemplary. *Id.* at 598.

■ The lodestar approach is the standard applied by courts in the First Circuit when reviewing applications for compensation. *Boston & Maine Corp. v. Moore,* 776 F.2d 2, 6–7 (1st Cir.1985); *Furtado v. Bishop,* 635 F.2d 915, 920 (1st Cir.1980); *In re Bank of New England Corp.,* 142 B.R. 584, 586 (D.Mass.1992). The lodestar is calculated by multiplying the number of hours reasonably incurred by the applicant by a reasonable hourly rate. *Furtado,* 635 F.2d at 920. After the lodestar is determined, the court may adjust the lodestar upward or downward based upon consideration of other factors, including the result or benefit to the Debtor's estate of the services performed by the professional seeking compensation, if this

**4.** Section 330(a) provides in relevant part the following:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103—

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses....

11 U.S.C. § 330(a).

**5.** Section 326(a) provides the following:

(a) In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

11 U.S.C. § 326(a).

has not already been considered in determining the lodestar. *Boston & Maine Corp. v. Moore*, 776 F.2d at 7; *Casco Bay Lines*, 25 B.R. at 756; *Swansea*, 155 B.R. at 31.

■ The Trustee bore the burden of proving that his $250 hourly fee was reasonable. *See Woods v. City Nat'l Bank and Trust Co. of Chicago*, 312 U.S. 262, 269, 61 S.Ct. 493, 497–498, 85 L.Ed. 820 (1941) ("[t]he claimant ... has the burden of proving their worth"); *Stoecker*, 118 B.R. at 601 ("[t]he Trustee bears the burden of proof in all matters concerning his fees"); *In re Gianulias*, 111 B.R. 867, 869 (E.D.Cal.1989) ("[i]t is well settled that the burden is on the attorney claiming a fee in a bankruptcy proceeding to establish the value of his services"). There is nothing in the record to indicate that the Trustee submitted any information indicating that his requested $250 hourly fee was within the range of market rates for Chapter 11 trustee services. Although the Trustee appeared and addressed the court with respect to his compensation at hearings on February 4, 1991, March 19, 1992, and March 23, 1993, he did not avail himself of the opportunity to substantiate his requested $250 hourly rate. Moreover, nothing in the record indicates that he provided any subsidiary information, other than his experience as both a certified public accountant and a Chief Financial Officer, from which the Court could determine the basis for his requested $250 rate. We find that the Trustee did not sustain his burden of proving that $250 was a reasonable hourly rate.

The bankruptcy court, citing *In re Erewhon*, 21 B.R. 79, 80–81 (Bankr.D.Mass. 1982), rejected the Trustee's argument that he was entitled to $250 per hour because he had negotiated his $250 nonbankruptcy rate with the Committee. The court determined the Trustee's $200 lodestar based upon customary rates in the Rhode Island market. The court incorporated by reference its findings made in *Swansea*, a case also decided in 1993, in which the court concluded that $200 was the maximum hourly rate that would be allowed for a Chapter 7 trustee. In establishing the $200 figure in *Swansea*, the court relied upon the district court's finding in *Mokover v. Neco Enterprises, Inc.*, 785 F.Supp. 1083, 1092 (D.R.I.1992), that "a senior partner's services is in the range of $180 per hour."

■ Contrary to the Trustee's contention, the court relied not on factual findings that were peculiar to *Swansea* but rather upon its determination of customary fees in Rhode Island as enunciated in *Swansea*. Moreover, the court did not improperly impose a "mandatory local rate cap" or ceiling. Rather, the court evaluated the Trustee's fee application with appropriate regard for the usual and customary rates charged by similar professionals in the local community. This was a proper determination of the market rate of professional compensation. *Cf. In re Public Service Company of New Hampshire*, 86 B.R. 7, 10 (Bankr.D.N.H.1988) (local rates for attorney's fees not required to be applied where no local firm was available to serve as debtor's counsel).

■ The bankruptcy court is required to consider prevailing market rates in determining the lodestar, based on usual and customary rates in the jurisdiction. In *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984),[6] the Supreme Court of the United States held that the lodestar must be calculated according to "the prevailing local rates in the relevant community." In *Calhoun*, the Court of Appeals for the First Circuit ruled that the determination of a reasonable hourly rate "requires information about fees customarily charged in the locality for similar legal services and information about the experience and billing practices of [the applicant]." 801 F.2d at 560.

■ The court's reliance upon customary attorneys' fees in setting the Trustee's fee was not clearly erroneous. Bankruptcy courts may apply the same standards when determining trustees' fees and attorneys' fees. *See Gill v. Wittenburg (In re Financial Corporation of America)*, 114 B.R. 221,

---

**6.** In enacting § 330(a), which predates this case, Congress specifically adopted the market rate approach.

223 (9th Cir.BAP 1990), *aff'd,* 946 F.2d 689 (9th Cir.1991); Queenan, Hendel & Hillinger, *Chapter 11 Theory and Practice: A Guide to Reorganization,* § 12.03 at 12:9 (1994 & Supp.1995). For purposes of awarding compensation, courts do not distinguish between non-attorney trustees and trustees who are attorneys. *See Sousa v. Miguel,* 32 F.3d 1370, 1373–1374 (9th Cir.1994) (chapter 7 case); Lawrence P. King, *Collier on Bankruptcy,* ¶ 326.02[2][g][ii] at 326–12 (15th ed.1997). Moreover, consideration of a professional's usual rate serves only as a useful starting point for determining a reasonable fee award. *See generally* Queenan, Hendel & Hillinger, *Chapter 11 Theory and Practice,* § 12.24 at 12:57 (Newsome, J.). No presumption exists that a professional is entitled to the amount he or she requests.

■ In establishing the $200 customary rate, the bankruptcy court relied upon its own knowledge and experience of prevailing fees in the Rhode Island market at that time. In the absence of evidence that would support the Trustee's requested $250 hourly rate, the court was justified in relying upon its own expertise in judging market rates for professionals in the jurisdiction in which it sits. *See In re Spillane,* 884 F.2d 642, 647 (1st Cir.1989); *In re Wire Cloth Products, Inc.,* 130 B.R. 798, 807 (Bankr.N.D.Ill.1991); *In re WHET, Inc.,* 61 B.R. 709, 713 (Bankr. D.Mass.1986). Additionally, the court properly considered the district court's findings in *Mokover* with respect to the range of attorneys fees awarded in the Rhode Island market, and it was entitled to take judicial notice of the $200 hourly rate it had determined to be reasonable and customary in *Swansea,* a case decided only five months prior to the court's November 4, 1993 decision in the instant case. *See In re B & W Management, Inc.,* 63 B.R. 395, 407 (Bankr.D.D.C.1986).

■ The $200 customary hourly rate initially determined by the court did not reflect the fact that the Trustee, as a solo practitioner, performed some duties that should have been billed at lower rates. The court properly reduced the $200 customary rate to $160 because the Trustee failed to delegate certain tasks to paralegals, assistants, clerks and messengers. Pursuant to § 330(a), the Trustee was not entitled to be compensated for overhead such as clerical and secretarial duties. *Sousa v. Miguel,* 32 F.3d at 1374; *In re Rauch,* 110 B.R. 467, 476 (Bankr.E.D.Cal.1990).

■ Nevertheless, the Committee's contention that, by waiting three years to challenge the $160 blended hourly rate, the Trustee waived his right to argue on appeal that the court erred in reducing the lodestar to $160 is without merit. All of the Trustee's interim awards were made on account, so that his total compensation was subject to review by the court at the conclusion of the case. *Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Charles N. Wooten, Ltd. (Matter of Evangeline Refining Co.),* 890 F.2d 1312, 1321–1322 (5th Cir.1989) (interim fee awards are not final and are subject to review). Thus, the Trustee is entitled to raise on appeal the issue of the lower court's reduction of the lodestar. However, between November of 1993, when the Trustee was notified that the bankruptcy court had established his compensable hourly rate as $160, and June of 1996, when he filed his final fee application, the Trustee failed to introduce any supplemental information that would have warranted reconsideration of the court's decision establishing the $160 hourly rate.

■ With respect to the Trustee's argument that in setting the $160 hourly rate the lower court overly emphasized the failure of J.L. Sanford and the amount of the dividend paid to unsecured creditors in this case, it was within the court's discretion to consider the benefit to the Debtor's estate from the services rendered by the Trustee in determining the amount of compensation to be awarded. *In re Cardinal Industries, Inc.,* 151 B.R. 843, 847 (Bankr.S.D.Ohio 1993). However, the result obtained is only one of many factors to be considered in determining whether the lodestar should be adjusted upward or downward. *Casco Bay Lines,* 25 B.R. at 756. We find that the bankruptcy court did not rely solely upon the result obtained in this case nor did it accord disproportionate weight to the failure of J.L. San-

ford and the resulting reduction of the dividend paid to unsecured creditors.

■ Finally, we note that the Final Fee Order can be affirmed on separate grounds. *Polyplastics, Inc. v. Transconex, Inc.,* 827 F.2d 859, 860–861 (1st Cir.1987) ("... we need not limit ourselves to the exact grounds for decision utilized below. We are free, on appeal, to affirm a judgment on any independently sufficient ground."). Although the Trustee provided a detailed narrative of the services he rendered, his itemization of services is woefully deficient as it includes thousands of time entries for which there are no descriptions other than "telephone" or "meeting." In *In re Smuggler's Beach Properties, Inc.,* 149 B.R. 740, 743 (Bankr.D.Mass.1993), the court stated:

> ... [a]n applicant submits a deficient fee application at its peril (citation omitted). Reduction of compensation is appropriate where time records inadequately describe services, provide insufficient detail, or are incomprehensible. The general subject matter or purpose of meetings, letters, telephone conferences, and office conferences must be set forth. *In re Office Products of America, Inc.,* 136 B.R. 964, 976 (Bankr.W.D.Tex.1992). Where time entries fail to identify the subject matter of the work, compensation for the task may be denied or reduced. *In re Citrone Development Corp.,* 106 B.R. 359, 362 (Bankr. S.D.N.Y.1989). The rationale for the requirement is simple: the Court cannot find services reasonable or necessary if the need and purpose of a service is not disclosed (citation omitted).

149 B.R. at 743. *See also In re Bank of New England Corp.,* 134 B.R. 450, 467–468 (Bankr.D.Mass.1991), *aff'd,* 142 B.R. 584 (D.Mass.1992).

We conclude that the lack of any detail in the Trustee's description of his services made it difficult for the bankruptcy court to have evaluated either the reasonableness or the necessity of the Trustee's services in this case. The bankruptcy court would have been justified in disallowing compensation for all undocumented time entries. Therefore, its Final Fee Order awarding the Trustee $347,-936 and requiring him to disgorge $52,064 was not clearly erroneous.

Accordingly, the judgment of the bankruptcy court is **AFFIRMED**.