**In re BLUE GROTTO, INC., Debtor.**

**Bankruptcy No. 96–12339.**

United States Bankruptcy Court,
D. Rhode Island.

Jan. 14, 2000.

Mark G. Sylvia, Salter, McGowan, Swartz & Sylvia, Providence, Rhode Island, Robert Resnick, President, Max Pollack & Co., Providence, Rhode Island, for Matthew McGowan, Chapter 7 Trustee.

Joseph P. Ferrucci, Ferrucci Law Office Ltd., Providence, Rhode Island, Sheryl Serreze, Asst. U.S. Trustee, Office of the United States Trustee, Providence, Rhode Island, for debtor.

### DECISION AND ORDER

ATHUR N. VOTOLATO, Bankruptcy Judge.

Heard on the following applications for compensation:

(1) Matthew McGowan, Esq., Chapter 7 Trustee, commission and expenses of $7,799;

(2) Matthew McGowan, Esq., Counsel to the Chapter 7 Trustee, fees of $5,522; and

(3) Max Pollack & Co. and Robert Resnick, "Business Custodian for the Chapter 7 Trustee," fees of $32,875.

■ No objections were voiced, so the Court is reviewing these requests independently. *In re Bank of New England Corp.*, 134 B.R. 450, 453 (Bankr.D.Mass. 1991), *aff'd*, 142 B.R. 584 (D.Mass.1992) (*citing In re First Software Corp.*, 79 B.R. 108 (Bankr.D.Mass.1987)) ("Even without regard to objections by other parties in interest, the court has an independent judicial responsibility to evaluate professionals' fees"); *see also In re Swansea Consol. Resources, Inc.*, 155 B.R. 28, 31 (Bankr. D.R.I.1993).

## BACKGROUND

On July 24, 1996, Blue Grotto, Inc., a popular Italian restaurant in Providence, Rhode Island, filed a petition for reorganization. On September 20, 1996, after less than two months in Chapter 11, the case was converted and a Chapter 7 Trustee was appointed. The United States Small Business Administration ("SBA") held a first priority security interest in all of the Debtor's assets, which by all accounts were worth far less than the $160,000 SBA debt. The Trustee agreed to operate the restaurant and to sell the entire operation as a going concern, in exchange for the SBA agreeing to a carve out for the junior secured creditor, Providence Economic Development Corporation, and a 10% dividend for unsecured creditors. The carve out consisted of ten percent of the anticipated net sale proceeds, after payment of Chapter 7 administrative expenses. *See* Consent Order Concerning Trustee's Revised Motion for Authority to Operate Business, Docket No. 34, Nov. 21, 1996. Under said Order the Trustee was to hire an independent person to "monitor the Debtor's operations," primarily to guard against "cash skimming" while the business was being marketed. *Id.* at 2, ¶ 6. Prior to said engagement, it was represented to the Court that this "overseer" would be on the premises at least one hour during peak dinner and lunch periods, to establish controls and to assure that cash receipts from operations were being properly accounted for. *Id.* The parties anticipated an initial operating period of not more than sixty days. *Id.* at 1, ¶ 2. On January 3, 1997, in accordance with the arrangement between the Trustee and SBA, we approved the Trustee's Application to Employ Max Pollack and Company as "business custodian," to assist the Trustee in the day–to–day operation of the business. Less than one month later, on January 13, 1997, the Trustee filed a notice to sell the Debtor's assets for $75,000, a sum far lower than anticipated. The sale was approved as the *best*, i.e., the *only* offer available. Notwithstanding the very low sale price, the closing was delayed for a long time because of disputes between the landlord and the purchaser. While the parties were feuding, the custodian continued to run the business for their convenience, but at the expense of the estate.

Now at the end of the day, if Chapter 7 administrative expenses are paid as requested, unsecured creditors will receive nothing and the Internal Revenue Service will receive only a pro-rata distribution on its Chapter 11 administrative expense priority claim.

Needless to say, the decision to operate this business in Chapter 7 did not turn out well, and probably was an error in business judgment by all concerned, including the Court. This is not to say that fiduciaries and court appointed officials are guarantors of the success of their decisions, but the issue here is whether such unsuccessful efforts should be compensated the same as professionals whose efforts do produce results that benefit the estate and creditors.

## DISCUSSION

■ Compensation to professionals is governed by Bankruptcy Code Section 330 which states, *inter alia:*

(a)(1) After notice to the parties in interest and the United States Trustee

and a hearing, and subject to sections 326, 328, and 329, the court may award . . .

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

(2) The court may, on its own motion . . . award compensation that is less than the amount of compensation that is requested.

(3)(A) In determining the amount of reasonable compensation to be awarded, the court *shall* consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

. . .

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

. . .

(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for—

(i) unnecessary duplication of services; or

(ii) services that were not—

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

11 U.S.C. § 330. In considering a trustee's request for commission, the allowance of reasonable compensation pursuant to § 330 is subject to a ceiling calculated according to the formula set forth in § 326. *See Garb v. Marshall (In re Narragansett Clothing Co.)*, 210 B.R. 493, 497 (1st Cir. BAP 1997). The Court in *In re Stoecker*, noted that "[s]ection 326(a) sets a ceiling on a trustee's fees, and does not create an entitlement to a commission in that

amount" (citation omitted). 118 B.R. 596, 601 (Bankr.N.D.Ill.1990). "The maximum compensation allowable under § 326(a) is awarded to a Chapter 11 trustee only in cases in which the result obtained and the benefit realized by the estate are exemplary." *Garb*, 210 B.R. 493, at 497 *citing Stoecker*, 118 B.R. at 598.

In addressing fee applications generally, the Bankruptcy Appellate Panel for the First Circuit has recently stated:

The lodestar approach is the standard applied by courts in the First Circuit when reviewing applications for compensation. *Boston & Maine Corp. v. Moore*, 776 F.2d 2, 6–7 (1st Cir.1985); *Furtado v. Bishop*, 635 F.2d 915, 920 (1st Cir.1980); *In re Bank of New England Corp.*, 142 B.R. 584, 586 (D.Mass. 1992). The lodestar is calculated by multiplying the number of hours reasonably incurred by the applicant by a reasonable hourly rate. *Furtado*, 635 F.2d at 920. After the lodestar is determined, the court may adjust the lodestar upward or downward based upon consideration of other factors, including the result or benefit to the Debtor's estate of the services performed by the professional seeking compensation, if this has not already been considered in determining the lodestar. *Boston & Maine Corp. v. Moore*, 776 F.2d at 7; *Casco Bay Lines*, 25 B.R. at 756; *Swansea [Consol. Resources, Inc.]*, 155 B.R. [28] at 31 [(Bankr.D.R.I.1995)].

*Garb v. Marshall (In re Narragansett Clothing Co.)*, 210 B.R. 493, 497–98 (1st Cir. BAP 1997). The number of hours reasonably expended involves the consideration of a number of factors and "the hours actually expended by an attorney do not necessarily constitute the hours reasonably expended. The court 'should review the work done to see whether counsel substantially exceeded the bounds of reasonable effort.'" *In re Casco Bay Lines, Inc.*, 25 B.R. 747, 755 (1st Cir. BAP 1982) (quoting, *Pilkington v. Bevilacqua*, 632

F.2d 922, 925 (1st Cir.1980)). The result in this case highlights the principle that "the bankruptcy process is for the benefit of the debtor and the creditors, not the professionals." *In re Gilead Baptist Church,* 135 B.R. 38, 41 (Bankr.E.D.Mich. 1991), *rev'd on other grounds,* 806 F.Supp. 644 (E.D.Mich.1992).

 Of major concern here is the fee application of Max Pollock & Co., the Chapter 7 Trustee business custodian,[1] seeking compensation for performing such services as personally handling daily food purchases, acting as maitre d', restaurant manager, and so on. Many of Mr. Resnick's activities should have been done by regular restaurant staff at their regular salary, under the direction of the Trustee, at no additional expense to the estate. The Trustee elected to operate this business and with that decision came the obligation to control those under his supervision. Allowing a business custodian to oversee *every* facet of the Debtor's business was unreasonable, of little or no benefit to this estate, and most importantly—was not authorized. It was neither the intention nor the spirit of the order authorizing the Trustee to operate, that the so-called "business custodian" would be charging so many hours at rates of $50–$100 per hour, or would be so involved in the operation of the restaurant. The purpose of the order was to put in place a non-insider to monitor cash receipts—not the imposition of another complete layer of full-time management. Put simply, this was overkill.

 With that said, we must still tend to the distribution of a woefully inadequate fund, in a manner that fairly treats all concerned. Since we have no way of knowing whether the fault was with the Trustee in not monitoring and curtailing Mr. Resnick's "expanded" role, or just how the responsibility should be allocated, we leave that assessment to the parties who know best how it should be done, i.e., the applicants. With $60,262 on hand, in the circumstances of this case,[2] $20,000 is the largest amount that may be allocated for Chapter 7 administrative expenses, and still preserve a reasonable fund available for distribution to creditors (although less than anticipated when the operation of the business was authorized). The apportionment of said $20,000 is left to the applicants. If they cannot agree, a hearing will be scheduled.

Enter judgment consistent with this order.

---

1. Resnick testified that in addition to the time detailed in his application, he spent countless (un-billed) hours running the Debtor's business.

2. The Trustee operated the business for only 33 days prior to approval of the sale. The fee requests amount to 77% of the estate. The facts do not support that type of treatment. (We calculate the period of operation starting on the day the Trustee was authorized to operate the business (11–21–96), through the day the Trustee's Notice of Sale was approved (2–3–97.)) With the exception of perhaps a short period to effectuate a closing, there is no good reason why the Trustee should have operated this business as long as he did, at least not at the expense of the estate.